LARKIN *et al.* v. HARRIS.

1. **Highway**: VACATION OF. An order vacating or changing one of two roads established on the same line will not operate to vacate or change both, but will be confined in its effect to the one it purports to change, and in respect to which notice was alone given.

2. —— MANDAMUS. In such case mandamus will lie against a road supervisor to compel the removal of a fence or other obstruction placed by him across such highway.

3. —— As it is the duty of the supervisor, under the statute, to remove all obstructions, and as the existence of the highway is a question of law arising upon the records of the county, it cannot be said to be a case of such " doubtful right," as places it beyond the reach of this remedy.

*Appeal from Davis Circuit Court.*

FRIDAY, JANUARY 25.

THIS action is brought to require, by mandamus, the defendant, who is a road supervisor, to remove certain fences he has himself placed across an alleged highway running through the defendant's land, section thirty-one, in township sixty-nine, north of range thirteen west. The issue made between the parties is as to the existence of the highway. The facts of the case in their detail are somewhat complicated, and can only be fully comprehended by the aid of a map; but all that are requisite to the question decided are stated in the opinion. The trial was to the court, who found the facts, and rendered judgment for defendant. The plaintiffs appeal.

*Traverse & Eichelberger, Weaver & Payne,* and *Jones & Moore* for the appellants.

*Trimble & Caruthers* for the appellee.

COLE, J. — The facts were found by the court, and, so far as necessary to state them, are as follows: In October, 1847, a road, known as the Wood's Mill road, running from said mill in Van Buren county to Bloomfield in Davis county, was duly established, and was at once opened and used for public travel. This road runs diagonally through section. thirty-one, owned by the defendant, who is road supervisor. A person traveling this road *from* Bloomfield to Wood's Mill will reach the north-west corner of section thirty-one just one-fourth of a mile south from Bloomfield, and will diagonally cross said section from the north-west corner to the south-east. In October, 1850, another road was duly established, leading from Bloomfield to Memphis, and was directly after that opened and used for public travel. This road struck the line of the other road near the center of the north-west quarter of said section and followed that line to the center of the section; thence it ran south of south-west, leaving the other road to the east of it, and crossing the south line of the section about one-fourth mile west of the south-east corner. Afterward these roads were so changed as that they both followed and occupied the same line from the center of the section to the south line of it, near the south-east corner. For more than ten years before September, 1865, the travel on said roads, in the north-west quarter of said section, and where both roads were originally laid on the same line, had been diverted from the line established by reason of the owner of a field there having set out his fence so as to enlarge his field. The line of travel was afterward and during said ten years twice changed by reason of further enlargements of the field. In September, 1865, the defendant having given notice that he would then ask that so much of the Wood's Mill and Bloomfield road as runs diagonally through section thirty-one be vacated

and the road changed so as to run on the west and south lines of said section, the board of supervisors made an order accordingly; the change was to be made at the costs of this defendant. He promptly made the change, whereby the road runs around instead of diagonally through the section, increasing the distance about one-third of a mile. The defendant also built his fences across the old road, and refused to remove them after being notified so to do by these plaintiffs.

It will be seen from this statement of facts that the only real question is, whether an order duly made vacating or changing one of two roads established on the same line, will operate to vacate or change both? The learned judge of the circuit court held that it would. In this opinion we do not concur.

There were two roads legally established after due notice given respecting each. They have one terminus in common. The other termini are remote from each other. By the original orders establishing the two roads they occupied the same line or common ground for near one-fifth of a mile; and by subsequent changes this distance was increased to near four-fifths of a mile. It was entirely competent for the board of supervisors, upon proper notice, to change one of these roads without changing the other. Persons alone interested in and living on the line of one of these roads, outside of their common ground, would not, however, be likely to observe a notice for, or to attend the board or a court to resist proceedings in respect to the other. So that an order made upon due notice respecting one road, if it could affect the other, would work a surprise upon persons interested alone in the latter, and upon the public. As well might it be said that the vacating of a road first laid, shall operate to vacate at the crossing, so much of any road subsequently established as runs over and across it; for, if the vacating operate to annul the subsequently established road it will do so at a crossing, transverse or diagonal, as well as where it runs along it. It seems to us that the order of the board of supervisors vacating or changing the one road should be limited to the road it purports to change,

and which alone the notice given authorized it to change. We see no objection to the form of the action. Rev., § 3767. At all events no objection to it was made in the court below.

In our view the diversion of travel from the true line by reason of the fencing and enlarging the field does not affect the question. If the public acquired any rights by user, they would apply equally to both roads.

Reversed.

OPINION ON REHEARING.

After the foregoing opinion was announced, the defendants and appellees by their counsel presented a petition for rehearing. Upon consideration thereof a stay of procedendo was granted, and the plaintiffs were ordered to make reply to the petition for rehearing. The entire case has been re-examined by us. We have given the case this second examination with more than ordinary readiness and freedom, because of the fact that the first opinion was prepared before the brief and argument of appellees' counsel reached us, it having been delayed by some cause unknown. Both the original argument and the petition for rehearing present the cause for the defendants with marked ability and manifest research.

The above opinion, as first prepared and filed, does not state the fact (it not affecting the result) that, after the action was brought against the defendant William Harris, the road supervisor, the court ordered that W. S. Martin, who was the owner of the land through which the road in controversy runs, should be made a party defendant and served with notice of the action. This was accordingly done, and Martin appeared and answered, denying the right as claimed by plaintiffs. What is said in the former opinion respecting the ownership of the land, the making of the new road, and the fencing across the old road, applies alone to the defendant Martin.

It is said in the former opinion that no objection to the form of the action was made in the court below. Counsel now insist that although no such question was expressly made

in the pleadings, that it nevertheless inheres in the case. We will consider it.

The proposition asserted by the defendant's counsel is, that *mandamus* is not the proper action to settle a right, but only to enforce a right already settled, and the writ will not issue when the right sought to be enforced is doubtful.

2. —— mandamus.

The correctness of this proposition need not here be controverted, although it may well be doubted whether it applies with all its common-law force to the action of mandamus under our statute, wherein the writ of mandamus only issues after the full and final hearing of the case, and not at its commencement, as at the common law. *Stevenson & Rice* v. *District Township*, 35 Iowa, 462. But, conceding it to exist, as stated, and in all its common-law force, let us test this case by it. If the road exists as a legally established highway, it is the clear duty of the defendant Harris, as road supervisor, to remove all obstructions in it and keep it in good order for travel. Rev., §§ 880 to 905. There is no doubt as to his duty in this respect. As we have shown in our former opinion, the question as to whether the highway did still exist as such, through the land in controversy, is to be determined wholly upon the records of the county. It does not depend upon outside facts, or matters *in pais*, but is a matter of law arising upon the orders of the court, which are of record and presumably known to the supervisor. Now, in view of the nature of the question and of these facts, it can hardly be said to be such a *doubtful* case, as would place it beyond the remedy by mandamus, even at the common law and under the rule as stated in the above proposition. In other words, it seems to us, that the term "doubtful right" means some other doubt than that arising upon the mere construction of a judicial order, or a legal doubt as to the effect or meaning of a record.

Again, and further, it is urged that the effect of the order changing the Bloomfield and Wood's Mill road is a matter of construction of the record itself, rather than a question of the jurisdiction of the court to make it. Suppose this to be correct.

The order as is shown by it was based " on the petition of W. S. Martin *et al.*, for a change in the Wood's Mill and Bloomfield road." The road is twice mentioned in the same way in the order itself, which also states that the " change of road is established as prayed for * * * upon condition that W. S. Martin grade, bridge and improve the new road so as to make a good road over said route for travel, and paying all costs." There is one expression in the order tending to show that the board of supervisors was unmindful at least of the fact, that there was another road upon the same line, or a part of it, when the change was ordered. That is, " said road to be examined and approved * * * * before old road is closed." But we cannot conclude upon the language of the whole order when taken together, that the board of supervisors intended to do more than change the Wood's Mill and Bloomfield road. There is nothing in the order itself to generate even a doubt as to that intent ; such doubt can only be made to arise upon proof *aliunde*, that another road had also been laid upon the same line. Upon what rule of construction can this fact be made a *felo de se ?*

Finally, it is urged that our *holding* works great injustice to the defendant Martin, for that he was at an expense of over $300, besides the value of the land around his section, where the new road is located, procured the change, and now he finds that his entire section is cut diagonally through by another road which must also be kept open, thus casting upon him the burden of two roads, while one would serve him and the public usefully. We recognize and appreciate the full force of this argument, and have been stimulated thereby to seek diligently for a legal avenue of escape from our conclusion. We can see none ; and must, as before, order the judgment

Reversed.