## ERIC OLSON v. JOHN HONETT AND OTHERS.[1]

May 26, 1916.

Nos. 9,742—(102).

**Mandamus — parties defendant.**

　　1. In *mandamus* to compel the repair of public roads the persons composing the town board may properly be made defendants.

**Same — to compel repair of public road — evidence.**

　　2. While *mandamus* may be a proper remedy to compel the members of a town board to repair a public road when they refuse to exercise

[1] Reported in 157 N. W. 1092, 1103.

any discretion in the matter, or perform their duty in an arbitrary or capricious manner, nevertheless, the one who applies for this extraordinary remedy must show a clear right to the relief demanded.

**Same.**

3. The petition and writ in this case are *held* to be too vague and indefinite to show such clear right.

Upon the relation of Eric Olson and Charles Freberg the district court for Martin county granted its alternative writ of mandamus, directed to the members of the town board of the township of Lake Fremont, commanding the board immediately to repair and place in suitable and passable condition for the use of the general traveling public the public roads and parts of roads described therein, or show cause why they had not done so. From an order overruling the demurrer of defendants to the relation of plaintiffs and to the writ, and denying their motion to quash the writ, Nelson, J., defendants appealed. Reversed.

*Haycraft & Palmer,* for appellants.

*E. C. Dean,* for respondents.

HOLT, J.

The defendants, composing the town board of the town of Lake Fremont, Martin county, demurred to the petition of plaintiffs and the alternative writ of *mandamus* issued thereon, on the ground that the facts stated in the petition and writ did not constitute a cause of action. The court overruled the demurrer, and certified that the questions presented were important and doubtful.

Appellants assert that the petition and writ should have been directed against the town and not against the individuals of the town board. Section 8266, G. S. 1913, provides: "The writ of *mandamus* may be issued to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station." Section 2525, G. S. 1913, reads: "The town board of each town shall have general care and supervision of all town roads therein, and such care and supervision of county roads therein as is prescribed by the provisions of this act, and shall procure machinery, implements, tools, stone, gravel and other material for the construction and repair thereof." It is thus seen that the law places upon the persons

133 M.—11.

composing a town board the duty to care for the public roads in the town, and that such care embraces both construction and repair. This is a duty devolving upon them because of their office. We therefore conclude that *mandamus* is a proper remedy to employ against the persons composing the town board who do not in good faith attempt to discharge the duty imposed upon them as a board. It does not follow that because the town is a legal entity, with power to sue and be sued, it is the only proper party in any legal proceeding involving the duties of the town. Its officers, considered as agents of the town, may be coerced to perform a ministerial duty by the writ of *mandamus*. Furthermore the demurrer is not for defect of parties. We therefore conclude that there is no merit in the contention that *mandamus* may not be maintained against defendants as persons composing the town board. When the town has supplied the necessary funds to repair the roads, the failure to repair must necessarily be laid at the door of those agents or officers of the town whose duty it is to decide when and where repairs shall be made and cause those determined upon to be made. Whether *mandamus* would also lie against the town in a case of this character is not considered or decided herein.

It is said that if defendants may be sued as officers, their duties in respect to repairs of roads involve the exercise of discretion, and, as to discretionary duties, *mandamus* does not lie. While courts do not undertake to control the manner in which official acts of a discretionary nature are to be performed, still *mandamus* will lie to set discretion in motion. If therefore the petition and writ show that there is a refusal to exercise any discretion whatever, or if it is made to appear that the discretion has been exercised in a clearly arbitrary and capricious manner the lower court should be sustained in its ruling.

But there is also the well-settled rule that *mandamus* is an extraordinary remedy to be granted only in case the petition shows a clear right thereto. Have plaintiffs so done in this case? In State v. City Council of Brainerd, 121 Minn. 182, 141 N. W. 97, 46 L.R.A. (N.S.) 9, there was quoted with approval this rule from State v. Anderson, 100 Wis. 523, 76 N. W. 482, 42 L.R.A. 239: "Before the petitioner for a writ of *mandamus* is entitled thereto, he must show more than that there is a public wrong specially injurious to him. He must show that such wrong consists of some failure of official duty clearly imposed by law, and that there is no

other adequate specific legal remedy. The duty must be positive, not discretionary, and the right must be so clear as not to admit of any reasonable controversy." In State v. Waggenson, 140 Wis. 265, 122 N. W. 726, 133 Am. St. 1075, it is stated that, before the extraordinary remedy of *mandamus* can be successfully invoked against a person, it must appear that it is the clear duty of such person to perform the act at the particular time and in the particular manner in which it is demanded of him. Elliott, Roads and Streets (3d ed.) § 573, gives the law thus: "Where a specific duty is imperatively enjoined upon a municipal corporation, and it has the means and the power to perform the duty, then it would undoubtedly be liable to one who, without fault on his part, has sustained a special injury because of the wrongful failure to discharge the duty positively enjoined by the statute. Such a duty becomes absolute, and the local authorities are deprived of all discretionary authority. Its performance may, in the proper case, be coerced by *mandamus*. It is very seldom, however, that the statute makes the duty imperative, for, in by far the greater number of cases, the matter of improving highways is committed to the discretion of the local authorities." So this court in State v. Town of Somerset, 44 Minn. 549, 47 N. W. 163, held that "town supervisors will not be required, by *mandamus*, to make a particular improvement upon a town highway, unless, at least, the duty to do so is so plain and imperative, having regard to all the considerations which may affect the action of such officers, that the neglect to do it cannot be reasonably justified upon grounds of discretion. The fact that there are sufficient road funds for making such improvement, without regard to what may be required elsewhere, does not justify *mandamus*." Leonard v. Wakeman, 120 Iowa, 140, 94 N. W. 281.

Applying the foregoing principles, do the petition and writ state a case against defendants? Therein it is charged that in round numbers $1,000 had been expended upon the roads during 1915, and there was in the middle of October $2,000 in the treasury of the town available for road purposes. Then it is alleged that the time for working roads and placing them in proper condition for travel during 1915 is far spent, "and the time is short for additional work to be done on the roads of said township, the same being in a bad and impassable condition in the following places, to wit: a strip of road lying along the north line of section 8," then fol-

low seven similar designations of strips in sections 19, 28, 26, 31, 34 and 36; "that said roads and parts of said roads need grading up, and the demands of travel require that sand and gravel be placed thereon, and otherwise fixed and improved. Plaintiffs further complain that although there are sufficient funds in the treasury of said township, and available for road and bridge purposes to place the public highways in proper condition, the roads and parts of roads, above described, have remained and still remain in practically an impassable condition, so that it is impossible to drive along some places with a heavy load, and in other places it is impossible to drive over with no load; and that through the negligence, indifference and carelessness of the said town board, said roads have so remained thus far during the year 1915, notwithstanding the fact that plaintiffs have notified said town board of the bad condition of said highways, and demanded that said roads be placed in proper and passable condition, said town board has persistently failed and refused to comply with the above demands, or the needs of the traveling public."

In addition to the duties imposed by section 2525, supra, we have these provisions found in sections 2491, 2492, and 2493, G. S. 1913. "The town through which any county road may pass shall maintain and keep it in repair under the rules and regulations of the highway commission * * * All town roads shall be located, constructed, repaired and maintained by town boards, provided that the county boards may aid in the construction, repair and maintenance of such roads. The town board may appropriate money from the town road and bridge fund to aid in the construction or improvement of any road within the town which has been designated as a state road * *. * the town board of any town may appropriate and expend such reasonable sums as it may deem proper to assist in the improvement and maintenance of roads lying beyond its boundaries and leading into it, and of bridges thereon, whether they are within or without the county in which it is situated."

We note that it is not stated whether the eight strips of road referred to are cartways, town roads, county roads or state highways; indeed, only inferentially are they to be considered parts of public roads. Although it is stated these roads "have remained and still remain in practically an impassable condition * * * and that through the negligence, indifference and carelessness of the said town board, said roads have so re-

mined thus far during the year 1915," still we may know only by inference that these roads have been continuously impassable or that no work has been done thereon. It will also be noticed that the pieces of road referred to are short and widely scattered. In all of our rural districts we meet places, in all roads, where at times it may be difficult to go through with teams or vehicles. All parts of every road cannot be in good repair at all times of the year. Especially is that true in early spring, or when heavy rains set in. The town board must exercise discretion as to where repairs should first be looked after, and as to when they are to be made. There is nothing to show that the town board exercised its discretion capriciously to the discrimination of these several pieces of road. We find no positive allegations that the available funds are sufficient to place all the public roads under the charge of the town board in good condition, nor that some of these funds have not been appropriated in the various ways authorized by the provisions of law above set out. We cannot assume that defendants have refused to do anything with regard to repairs, for it does appear that $1,000 had been paid out when the petition was made. Nothing is averred as to the expenditures incurred for repairs made but not due or paid, so that considerably more, if not all, of the fund may already be appropriated for legitimate purposes. We consider the allegations of the petition and writ too meager, vague and indefinite to make out that clear right of plaintiffs to coerce defendants to action, with respect to these isolated parts of roads, which is required in actions of this kind. It falls far short of designating in respect to these roads the clear and specific duty which the statute placed upon the county commissioners to maintain a bridge at a designated place which we find in State v. Board of Co. Commrs. of Renville County, 83 Minn. 65, 85 N. W. 830. If upon equivocal, inferential and general statements officers of municipalities, whose duties cover a wide field in which they must use their judgment and discretion so as to do that which is the most essential first and the less important as time and funds permit, are to be dragged into court and explain why the minor matters are not attended to, they will be unnecessarily hampered and harassed in the discharge of their duties. We can readily see that a town board might be compelled to spend most of its time in court, if every traveler who encounters a bad piece of road is entitled to

this writ upon a petition showing such a condition, its existence for some time, and that there are unexpended road and bridge funds.

The writ issued October 16, 1915, and was made returnable December 3, 1915. · This makes it almost a moot case. Little could be done by the present defendants between October 16 and the hearing, and it is certain that in this climate nothing at all could have been accomplished by them, prior to the expiration of their term of office, had a peremptory writ issued on the return day. In this aspect it may be of importance that the action is not brought against either the town or the town board but against the individuals whose tenure of office is limited.

The cases relied on by plaintiffs are not in point or are based upon statutes widely different from ours. In State v. Board of R. & R. Com. Mobile Co. 180 Ala. 489, 61 South. 368, the board erroneously concluded that certain territory did not come within its jurisdiction and therefore no discretion at all was exercised in the matter. The writ was held proper. In State v. Kamman, 151 Ind. 407, 51 N. E. 483, failure to repair had existed for over a year, and the statutes of Indiana are exceedingly specific and drastic in respect to the duty of the road supervisor to make road repairs, but they are also liberal in respect to his right to obtain the necessary funds. People v. City of Bloomington, 63 Ill. 207, was a case where *mandamus* was held to be the proper remedy to compel the officers whose duty it was to prohibit obstructions in public streets to remove the same in a specified street. It meets with no difficulty to coerce by writ of *mandamus* the performance by an official of such specific duty as the removal of an obstruction in a public highway when such duty is by law placed upon him.

Our conclusion is that the demurrer was well taken. Order reversed.

On June 23, 1916, the following opinion was filed:

PER CURIAM.

In the petition for rehearing great stress is laid upon the proposition that "an applicant for *mandamus* must plead his facts with the same certainty, neither more nor less, than is required in ordinary actions at law." We attempted to make clear that while the town board is charged with the care of public roads the duty is one involving judgment and dis-

cretion as to the work to be done thereon, the extent, the place, and the time thereof—all depending upon a variety of conditions. *Mandamus* does not lie to control official discretion. Therefore to state a case for the issuance of such writ to compel the town board to repair roads, facts must be pleaded which clearly negative that the repairs sought to be compelled are those which the law has left to the board to perform in such manner and at such times as its discretion and judgment might dictate. We do not think that was done in this case.

The petition for a rehearing is denied.